Case number 19-6142, Shelby Advocates et al. v. Tre Hargett et al. Oral argument is not to exceed 15 minutes per side. Ms. Chumney for the appellant. Good morning, your honors. Pleasure to be here. I'm Carol Chumney. I'm the attorney for Shelby Advocates without Elections and the individual plaintiffs in this lawsuit. We have here with us today Mike Cornell, former state legislator who is a plaintiff, and State Representative Joe Towns who is a plaintiff, Dr. Joe Weinberg who is also a member of the Shelby Advocates. I would like to talk a little bit about a couple of cases I feel are very relevant to the court's consideration. One is Stewart v. Blackwell. And we would ask this court to reverse the district court under the de novo standard and knowing that all allegations of the complaint have to be accepted as true and construed in the favor of the plaintiffs. Under Stewart v. Blackwell, the court held that it was not just the right to vote but the manner of exercise of the vote and that there is a zealous protection of the right to vote has been the norm. Also, it noted that a denial of constitutionally protected rights demands judicial protection. Our oath and our office require no less of us. In that case, the plaintiffs were just voters in counties using the punch card machines. But the court found that the increased probability of future injury was sufficient to confer Article III standing based upon an increased risk that their votes would be improperly discounted. What do we do with the fact that it looks like there might be some new voting machines being purchased? Does that implicate things one way or the other? I assume that's good news. Sure. New machines are better than old machines. When the Stewart case was decided, there were other machines coming online, but the court still went ahead and ruled. Noting, I believe it was the Stewart case that noted that there were other, some machines were in place, but they all weren't. So there was no mootness issue there, and the court went ahead and ruled. And I think the court has a responsibility to rule where there's deficient technology in front of it. And just based upon the fact that it's been six years that the local election administrator has said we need new machines and we still don't have them as we stand here today. What was the nature of the allegation in the complaint in Stewart that the error rate was 50%? There was an allegation, but the Stewart case also dealt, had optical scan machines. It was more than just punch card machines. But they did have expert testimony, one based just on the error rate, but also expert testimony as well. But there was expert testimony. That means it was not a case that was decided based on the allegations of the complaint but something else. They had. They actually. I'm not sure. I may be wrong about this, but I think maybe there was a hearing on a preliminary injunction. There was a hearing, Your Honor. We haven't had that opportunity in this case. And so we did file a motion for preliminary injunction. We wanted to put our expert brief in. But we do have our expert declarations that are attached to the complaint, Matthew Bernard. And he states there's a greater risk of compromise by use of these voting machines. He also talks about malfunction and circumstantial evidence of tampering. And we also know that there's been a sea change since the Mueller report, the 2016 Russian interference in the elections. Our Department of Homeland Security Secretary said by 2020 all Americans need verifiable and auditable ballots. Also, the entire state of Georgia has outlawed these voting machines now, the same ones we use in Shelby County. And the Congressional Task Force for Election Security in January 2018 said paperless DRE voting machines are highly vulnerable to attack. So the threat is certainly impending sufficient to find standards. Have you alleged any, you haven't alleged any past infiltration or hacking with respect to Shelby County, have you? The only allegations are with respect to the experts in Georgia and then some other county in Tennessee where there was an attempt. But there's no allegations that Shelby County itself was ever infiltrated by hackers? We, Your Honors, we have not alleged that, but we have an expert who says that it is highly likely. And that from what he has seen, and also one of the amicus briefs cited the Election Assistance Commission, which states that all 50 states have been, there have been attempts at hacking all 50 states. So it's not just has it happened, it's happening, efforts are happening everywhere. Everywhere? Does that mean, does that affect the inquiry? Does that suggest everybody has standing in every state to challenge their system against hacking vulnerabilities? We're not making that argument for every state. We're just here on our machines, which are 13 years old, which have not been upgraded. Microsoft no longer provides support for them. And we've had documented over and over and over again instances of malfunction. If you look at the Stewart decision, it said common sense dictates that you should do something when you have that. We have 100 vote variances in our appendix exhibit H to our complaint, the Voting on Thin Ice report. 100 vote variances from audited results in 2016. A system can be programmed to not upload all cards, and the system reported successful uploads when it wasn't on page 29. The gym server memory cards did not communicate with each other. It was the breakdown in the system. A University of California report that shows that voting machines can be programmed to call hackers from its modem and allow remote log in to gyms. Each of these voting machines has a modem. So we would submit that with the sea change, with the U.S. Department of Homeland Security warnings, with the experts in Georgia who convinced the courts there that these machines are highly vulnerable to attacking with our own experts' report. And we have not been allowed to look at the machines. We would love to look at the machines and do a forensic audit. What's your best case for imminence? You know, if you're going to use past harms, past mistakes, show the risk of a future harm, right? That's the basic theory. What's your best case for borrowing from another jurisdiction their past experience and using it for imminence in this jurisdiction? Well, I think the Georgia decisions are very relevant to our case and the fact that they had the expert proof, one of the same experts that we have, and they outlawed the machines. And I would also submit that imminence is an elastic concept. It can mean realistic danger under the Luan decision. And we feel that that applies in this case, that there is a highly realistic danger. And so that would be our support for that. Also, Your Honors, the Secretary of State and Stewart acknowledged that thousands of Ohio voters had been disenfranchised by the antiquated voting machines. Our Secretary of State has admitted thousands of voters were given the wrong ballots. That's happened more than once. We document it. And also, there's no rational basis. Can I ask a question? That's unrelated to the voting machines, right? That was just, was that just negligence on the part of Shelby County? They never did a forensic audit, Your Honor. So. But that is, is that a, the risk there is a risk that's distinct from the voting machines themselves, right? It's just a risk that the county will hand out the wrong ballots to individuals? Well, let's go to Legal Women Voters v. Bruner then, which is the other landmark decision I feel that is very relevant to. And in that case, they found a myriad of problems and they were standing in that case. The touchscreen voting machines dated back to 1970, had problems back to 1971. Just like in our case, in that case, malfunctioning machines, vote flipping. The human error would cause the loading of the wrong ballot, isn't that correct? It can, Your Honor. So we're alleging under both, under both theories. What happens is the voter goes in, shows their either identification or their voter registration card, and it's up to the individual, the election worker who's sitting there to figure out which ballot that person is supposed to get and hand that card to whoever goes to the machine, to the person as they go to the machines, right? Well, the ballot is on the machine and there's a card, but it's But the card is supposed to draw up the right ballot. The card is supposed to draw up the right ballot, but malware can come in, it can interfere with that process, Your Honor. There's not any allegation that that has in fact happened. The allegation is it could happen. And the things that you're alleging have happened don't really have anything to do with the machines, if I'm understanding it. They have to do with human error on the part of the workers in the polling place. It's both, Your Honor. We're alleging both. We're alleging under Stuart v. Blackwell, deficient machines. We're alleging under, like, the League of Women Voters v. Bruner, all the procedures, all the processes, all our data exposed on eBay. No, the voters were never notified of that. There's never been anything told to the voters about why that happened or what's been done to address it. Well, there seems to be some dispute about, or I'm not sure it's a dispute, but there seems to be some discrepancy about what actually was disclosed. You say in your brief, I believe, that the Social Security number was disclosed, but that is not what the allegation of the complaint is. And there seems to be something, I can't remember where this comes from, but something that indicates that the Social Security number was not disclosed and all the rest of the information that was disclosed is public information. Is that right or wrong? Your Honor, we allege that personal voter data was disclosed. We believe it was Social Security. They say it's not, but that is a fact, Your Honor, that we should be construed in our favor at this stage under the motion to dismiss proceedings. So we believe that. Would there be a reason that you had mentioned it only in your brief and not included in your complaint other than you were not sure that you could, in good faith, make the allegation that Social Security numbers were included? We're making that allegation based on the state law, Your Honor. The state law says that that document, that information should be redacted before anything is given to the public. How our computer got over into a national conference where all this voter data is on it is outrageous. And voters still have not had any information about what happened, why it happened, and how it's been addressed. So we feel that as well, Your Honor, is the reason. so devoid of standards and procedures so as to violate substantive process, as in the Bruner decisions. The plaintiffs have been arbitrarily denied the right to vote depending on where they lived. And as in the League of Women Voters, the Shelby advocates have injury by its voter registration and education efforts being impeded and by the investigation, the pre-investigation that they did, where they spent resources, whether it's traveling in Nashville, sending a fax, copywriting their report, copying their report. A trifle is sufficient for the court to find diversion of resources. Plaintiff Connell spent money on voters who didn't get to vote for him. Representative Joe Towns and Thornton have as well. So, Your Honor, I think my time is up. Thank you. Good morning, Your Honors. I'm Janet Kleinfelter with the Tennessee Attorney General's Office, and I'm here on behalf of Secretary Hargett, State Election Coordinator Goins. I am going to be speaking for 12 minutes, and then counsel for the county defendants has three minutes. Your Honor, there is one issue and one issue only before this court, and that is whether or not the plaintiffs have sufficiently alleged facts demonstrating that they have or will suffer a concrete and particularized injury from the continued use of the current voting system in Shelby County. The district court found that they had not, and we're asking this court to affirm that decision. Your Honor, most of... I don't know which one of you is best suited for this, but are there new voting machines, and what's the status? So, they are in the process of getting new voting machines. The process has been going on for a while. Well, under state law, it is the county government that has to actually purchase the machines, and that means the county government has to appropriate the funds for the purchase of those machines. Politics comes into play in terms of getting that funding. Funding, however, was approved this year for the funding for the purchase of those machines. They are in the process, but again, the machines have to go through the county procurement process. They are in the process of doing that. Those machines probably will not be in place for the March presidential preference primary simply because there's not enough time when you take into account early voting. That election takes place on the first Tuesday in March, but early voting begins two weeks prior to that. The time that it takes to actually prepare the machines, prepare the ballots, prepare everyone, train everyone for 166 precincts in Shelby County... There's no mootness then? There is no mootness at this point, Your Honor, but it will happen very quickly. Are the new machines, would they be in place in November? They will be in place by August, Your Honor, by the August primary. That is a state primary election in August and also the federal primary election, and they will certainly be in place by the time of the November general election. And those machines, Your Honor, will have the paper audit trail, the voter verified paper audit trail that is the big complaint that plaintiffs have with the current voting system in Shelby County. I would very quickly like to address just a couple of the points that counsel raised. Judge Sutton asked the question of eminence. Where is the eminence here given that all of the harms that have been identified have been past harms, harms going back to 2012 or even prior to that time period? The only case plaintiffs cited to you is the curling decision out of Georgia. The big distinction in that case, Your Honor, is that in Georgia it was demonstrated that not once but twice that system had been hacked into and they were actually able to manipulate votes in that system through the hacking. As Judge Murphy recognized, there are no allegations that that has ever occurred in Shelby County despite the fact that these machines have been in place for a significantly long amount of time. And, Your Honor, given the fact that we have six municipalities that use these machines for municipal elections as well as the county using it for county elections, state elections, and federal elections, these machines are used on a year-round basis every year. But when you look at the allegations that have come out and in the number of lawsuits that do not exist, the number of election contests that do not exist because of people alleging that the machines malfunctioned or they were hacked or they were manipulated, they don't exist, Your Honor. In fact, the only case reported decision out there, and it's actually an unreported decision of the Tennessee Court of Appeals, in which these allegations were raised, the Court of Appeals found that there was no proof in the record. The plaintiffs could not put on any proof of all of these malfunctions. And that case, Your Honor, is Newman v. Shelby County Election Commission. I only have a Westlaw site for it, 2012, Westlaw 432-853. So your allegations, or excuse me, not your allegations, your brief makes arguments tied to both eminence and generalized grievance. And I'm curious, are you arguing both that it's not certainly impending and that the vote dilution, if it was certainly impending, does not qualify as a sufficient Article III injury because it's a generalized grievance? Yes, and that is in fact what the district court found as well. But that's somewhat in conflict with cases like Gill that suggested that the right to vote is a personalized right. And what if the hypothetical was changed to be a money damages suit because of a mass hacking, and lots of individuals in Shelby County had in a prior election not been allowed to vote because of some type of hacking that had gone on. Would you think that somebody who was not allowed to vote because of that hacking would not have suffered an Article III injury because it was a generalized grievance? Your Honor, in that instance I would say that it's not a generalized grievance because the individual would have, that is a personal right to vote. So why is the fact that it's a threat and future harm? It's still the harm that they're asserting is a threat that their vote won't count. And Your Honor, the problem with that is it's based purely upon speculation. There are absolutely no facts that are alleged. That shifts you to eminence. It does shift to eminence except that, as Your Honor recognized, what is the evidence that is there of past harm where this has occurred? And the past harm has not been a result of the machines malfunctioning. The past harms that are alleged have been the result of human error. And that is always going to happen. There is always going to be the risk of human error in elections because humans are not perfect. And there is no perfect election out there. So, for example, the primary election that plaintiffs continued to go back to, the 2012 election in which voters were given the wrong ballot, that was a result of redistricting, in fact. The Shelby County Commission did not timely do their redistricting. And as a result, errors were made and people were redistricted and people were placed in the wrong district or were given the wrong ballot. It had nothing to do with the malfunctioning of the machines. The vast majority of the errors or harms that plaintiffs have alleged have been the result of human error. There have been a few instances they've identified where people were given a wrong ballot. Again, as Judge Gibbons recognized, that was a situation either where human error, somebody put in the wrong card, or they were in the wrong district. They've never identified a situation where the machines themselves have malfunctioned. And these plaintiffs have certainly not identified a situation where they have been harmed. For example, Plaintiff Towns. Yes, he's a state legislator. He was elected in 1994. He has been reelected using these same machines in primary and general elections for the past, well, since 1994. These machines went into place in 2006. So for 14 elections, he was reelected and not once has he said that those machines do not accurately reflect the will of the people because they're so antiquated, they malfunction, they're subject to vulnerabilities. Plaintiff Scott, Your Honor, there are absolutely no allegations in the complaint with respect to Plaintiff Scott that she has suffered any individualized harm. Other than the fact that these machines are vulnerable. Plaintiff Thornton, the allegation is, is that she was a candidate. She intends to be a candidate in future elections. And therefore, she is going to have to expend funds in future elections on cyber security experts and poll watchers. And then there is this very generalized statement contained in the complaint that she had to make those expenditures in past elections. She made expenditures in past elections. And there are no other allegations in the complaint. There are no allegations that Plaintiff Thornton was not allowed to vote, that she was not allowed, that votes were not counted for her. That is the extent. Finally, with respect to Plaintiff Save on the diversion of resources argument there. They have acknowledged that the only diversion of resources here has been for the purposes of bringing this litigation. And now they have tried to argue, oh, well this voting on thin ice report that we issued in August of 2017 should constitute investigative costs and that should be sufficient under this Court's decision in the Fair Housing Council versus the Village of Old St. Andrews. The problem with that, Your Honor, is that that report is the whole purpose of Save. When you look at the complaint and you look at what the allegations are with respect to Save's purpose, they specifically state their purpose is for research, advocacy, and education. That purpose includes submitting open records requests to governmental bodies, to report to the public and governmental bodies on vulnerabilities related to public elections, to monitor nationwide developments in election law and technology, to provide speakers for programs to inform and educate the public, on and on. And that is exactly what their voting on thin ice report was. Not to mention the fact, Your Honor, that that report was issued more than a year prior to the filing of this lawsuit, which is completely different from the facts in the Fair Housing case. I have run out of my time, so I want to concede to my co-counsel. Thank you. Good morning, Your Honors. My name is Pablo Varela. I represent the Shelby County Election Commission, Linda Phillips, the Administrator of Elections, and the individually named commissioners of the Election Commission, who were named in their official capacities. It is a pleasure to be before you, Your Honors, and I'm here primarily to You're the one buying the machines? Your Honor, as General Kleinfelter stated, under state law in Tennessee, the Election Commission tells the local county, which is the funding arm of the Election Commission, that they need new machines. At that point, the county is responsible for its procurement process to send out the bids, send out the requests. It goes to the county commission, right, for approval? Correct. The county commission would have to approve the budgetary item and to set aside money so that the procurement office will actually put the RFPs and RFQs out there for the vendors to then bid on. Without that financial piece, the procurement office won't proceed forward. That didn't happen until this year. We had to go through a process with the county. Let's say I have an employee that has worked for me and they keep making mistakes. It's almost like by the calendar, once a month, another mistake. Finally, I just say, enough is enough. The person comes to me and says, gosh, I realize I deserve this, I've earned it, but can you just give me a year longer so it will help me out? I'm like, okay, fine. Isn't it quite imminent there's going to be another mistake? Your Honor. That seems to be when you decide to replace machines because they're old, tired. Why isn't it you acknowledging an imminent problem? I'm sorry, Your Honor. I didn't mean to interrupt. The mistakes that have been alleged don't have anything to do with the machines or malfunctioning of the machines or hackability of the machines or that they've actually been hacked. The mistakes that have been alleged have to do with human error. In fact, appropriate remedies in the past have taken place at the Election Commission. In fact, we have a new Administrative Elections that's only been there for about three years. Because of some of these errors that have happened in the past, former Administrative Elections have been held responsible for making sure that that didn't happen and they were replaced. As far as these machines go, the allegations, again, I believe it was hit on earlier, they're not related to vulnerabilities of the machines. They're related to human error, and I believe... And the human error could be people employed by the Election Commission, but they could also be people who are not defendants in this case who are, for one reason or another, election workers who are not employed by the Election Commission. Is that right? On a regular basis. I think all workers, whether they're permanent or temporary, would be employed by the Election Commission for each election. They hire... I guess what I'm trying to say is they don't work year-round for the Election Commission. Is that right? Correct, Your Honor. And I've exceeded my time. Do you have any further questions? Thank you, Your Honor. You must have reserved some rebuttal, and after telling you it would help us if you told us what it was. I don't remember what it was. 20 minutes. Thank heavens. I was hoping I didn't forget to say it. Okay. Thank you, Your Honor. No, no, no. I'm sure you told us. I just... I was back there. Oh, my gosh. Did I remember? It's a reflection of my interest in the argument. Yes, Your Honor. I think it is. I want a couple of quick points. One, the recertification issue. In the Stuart v. Blackwell case, they decertified. In this case, our machines are not on the recertification list. So why are the voters in Shelby County voting on machines that are not on the recertification list that treats them differently than voters in other counties in the state and gives a standing? Representative Joe Towns, yeah, he won some elections. He lost a few. He lost Congress, I know, at least once. And I think maybe he would have won by a wider margin if things had been better with the machines. And also, getting into the Georgia and the eminence issue, in Georgia, they didn't find that it was just human error that these machines were no good. They found the machines were no good after substantial testimony and arguments. And I would just like to point out a few other things. There was a 2007 Tennessee Advisory Commission on Intergovernmental Relations report found editing software on our system. Somebody was maybe editing reports, trying to alter those to agree with vote totals. They were allowing unfettered access into the tabulator. Now, so our system was compromised back then. Yes. 2007. Now, who was the individual who was? We would like to know, Your Honor. Was this a Shelby County issue or was this somebody else? Shelby County, a special appendix to the Tennessee Association, the TASER report, a special appendix just on Shelby County, and saying that And that would be a year after these voting machines were put into operation? Yes, Your Honor. So they have been compromised. They were compromised. And there's a cloak of darkness going on about what's going on with all this. There should have been a report, you know, hey, we looked at this. We found this. We fixed this. There's nothing. We asked through open records for it. And they said in this report, don't connect the machines to the Internet. In 2013, the vendor did a report for the Shelby County Election Commission saying, hey, the machines are connected to the Internet. Don't connect them to the Internet. So they were still doing it in 2013, compromising the system, according to our expert whose declarations are attached to the complaint. Our databases were sent to Canada insecurely. And talking about wrong ballots, it won just in 2012. In 2015, in a city council election, and we allege this in our voting on thin ice and in our complaint, in a city council race, once again, voters give the wrong ballots. Now, can you say that's redistricting? You know, at some point, you have to ask. It's deficient technology, and we also believe it's the overall system. And we think if this doesn't merit it, what can? All machines considered by the Election Commission now are hackable, and so we don't believe that they're on the right track at all. They've had plenty of time to do something about it. By the way, I would just mention the vote flipping, which also indicates deficient voting equipment. Thank you. We appreciate very much the argument that all of you have given, and we'll consider the case carefully. And as that's our only case for argument this morning, you may adjourn court. Court is now adjourned. Thank you. Thank you. Thank you. Thank you.